UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

SANTOS M.C.,[1]                                      Case No. 25-CV-4264 (PJS/DJF)

Petitioner,

v.                                                                          ORDER

SAMUEL J. OLSON, Field Office Director
of Enforcement and Removal Operations,
St. Paul Field Office, Immigration and
Customs Enforcement; KRISTI NOEM,
Secretary of the U.S. Department of
Homeland Security; TODD LYONS, Acting
Director of U.S. Immigration and Customs
Enforcement; PAM BONDI, in her official
capacity as Attorney General of the United
States; and RYAN SHEA, Freeborn County
Jail Sheriff,

Respondents.

---

Gloria Leticia Contreras Edin, CONTRERAS EDIN LAW, PA, for
petitioner.

Liles Harvey Repp and Ana H. Voss, UNITED STATES ATTORNEY'S
OFFICE, for all respondents except Ryan Shea.

David John Walker, FREEBORN COUNTY ATTORNEY'S OFFICE, for
respondent Ryan Shea.

This matter is before the Court on petitioner Santos M.C.'s petition for a writ of

habeas corpus and motion for a temporary restraining order.  *See* ECF Nos. 1 and 2.

---

[1]Because this is an immigration case, the Court identifies petitioner only by his
first name and last initial.  *Cf.* Fed. R. Civ. P. 5.2(c).

Santos has lived in the United States for many years without lawful authority, and the government is seeking to remove him. The issue before the Court is whether, during Santos's removal proceedings, the government is required to detain him under 8 U.S.C. § 1225(b)(2) (which applies to "an alien seeking admission" to the United States) or whether the government instead has discretion to release him on bond or conditional parole under 8 U.S.C. § 1226(a) (which applies to an alien who is unlawfully present in the United States).

## I. BACKGROUND

Santos is a Guatemalan citizen who unlawfully entered the United States in about 2009. ECF No. 9-4 ¶¶ 1, 5. Santos is married to an American citizen, and together they have four children, all of whom are American citizens. *Id.* ¶ 2. Santos is the manager and part-owner of a Mexican restaurant in Wadena, Minnesota. *Id.* ¶ 14.

Santos was convicted of drunk driving in 2015 and disorderly conduct in 2024. ECF No. 1-4 at 4. (Santos was also arrested for domestic assault, but this charge was dismissed. ECF No. 9-1 at 10.) Following his 2023 arrest, the Department of Homeland Security ("DHS") detained Santos and initiated removal proceedings. Importantly, DHS proceeded under § 1226(a), not § 1225(b)(2). ECF Nos. 9-3 at 1; 9-4 ¶ 3.

An immigration judge ("IJ") ordered Santos released on bond under § 1226(a). ECF No. 9-5, 9-6. The government appealed. ECF No. 9-6. Almost two years later, in

August 2025, the Board of Immigration Appeals ("BIA") sustained the government's

appeal, agreeing that Santos had failed to establish he was not a danger to the

community.  ECF No. 1-3.  The government detained Santos in September 2025, again

acting under § 1226(a), and not under § 1225(b)(2).  ECF Nos. 1-4 at 3, 9-7.

In October 2025, Santos requested a bond-redetermination hearing.  In response,

DHS argued—for the first time—that Santos could not be released on bond because he

was subject to mandatory detention under § 1225(b)(2).  ECF No. 1-5.  The IJ agreed

with DHS, finding that Santos's detention was mandatory under § 1225(b)(2), and thus

that she lacked jurisdiction to consider Santos's request for a bond redetermination.

ECF No. 1-6.  Santos is currently incarcerated at the Freeborn County Jail.  ECF No. 1

¶ 49.

## II. ANALYSIS

### A.  Legal Standard

A court may provide habeas relief to a person who is being detained in violation

of the Constitution or laws of the United States.  28 U.S.C. § 2241(c)(3).  The petitioner

has the burden of proving that his or her detention is illegal by a preponderance of the

evidence.  *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025).

Santos seeks not only a writ of habeas corpus, but a temporary restraining order

("TRO").  Because the government received notice of Santos's TRO motion and an

opportunity to respond, the Court will treat Santos's motion as one for a preliminary injunction. *See* Fed. R. Civ. P. 65. In deciding whether to issue a preliminary injunction, a court must consider: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

### B. Jurisdiction

As noted, the parties dispute which of two provisions of the immigration laws governs the question of whether Santos must be detained. Santos argues—and, prior to October 2025, the government agreed—that the government has discretion to release him under § 1226(a). If Santos is correct, then the IJ erred in finding that she does not have jurisdiction to determine if Santos is entitled to a bond-redetermination hearing. ECF No. 4 at 9–16. The government argues that Santos is subject to mandatory detention under § 1225(b)(2). ECF No. 8 at 18–24. If the government is correct, then the IJ did not err.

As an initial matter, however, the government argues that this Court lacks jurisdiction to decide this issue. Under 8 U.S.C. § 1252(g), district courts lack jurisdiction over "any cause or claim by or on behalf of any alien arising from the

decision or action by [DHS] to commence proceedings, adjudicate cases, or execute removal orders against any alien." The government argues that § 1252(g) deprives this Court of jurisdiction over Santos's habeas action.

The problem for the government is that the Eighth Circuit has interpreted its decision in *Jama v. Immigration & Naturalization Service*, 329 F.3d 630 (8th Cir. 2003), *aff'd*, 543 U.S. 335 (2005), to "essentially carve out an exception to § 1252(g) for a habeas claim raising a pure question of law." *Silva v. United States*, 866 F.3d 938, 941 (8th Cir. 2017) (citation modified). Although "*Jama* is an outlier," *Ali v. Sessions*, No. 17-CV-5334 (PJS/KMM), 2017 WL 6205789, at *4 (D. Minn. Dec. 7, 2017), *Jama* nevertheless binds this Court.

Santos presents a "habeas claim," and his habeas claim "rais[es] a pure question of law": whether § 1225(b)(2) or § 1226(a) governs his detention. Moreover, Santos does not challenge a decision by DHS to commence a proceeding, adjudicate a case, or execute a removal order. Thus, this Court agrees with other judges in this District who have exercised jurisdiction over claims identical or similar to Santos's. *See, e.g.*, *Belsai D.S. v. Bondi*, No. 25-CV-3682 (KMM/EMB), 2025 WL 2802947, at *5 (D. Minn. Oct. 1, 2025) (exercising jurisdiction over a challenge to "the lawfulness of [petitioner's] detention without bond as contrary to the laws of the United States—directly within the ambit of habeas"); *Jose J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), 2025 WL 2466670, at

*7 (D. Minn. Aug. 27, 2025) (exercising jurisdiction to decide whether an alien is subject to discretionary detention under 8 U.S.C. § 1226 or mandatory detention under § 1225(b)(2)); *Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *6 (D. Minn. Aug. 15, 2025) (noting that a petitioner's due-process challenge to ongoing detention "does not arise from the government's commencement of proceedings" (citation modified)); *Eliseo A.A. v. Olson*, No. 25-CV-3381 (JWB/DJF), 2025 WL 2886729, at *5 (D. Minn. Oct. 8, 2025) (collecting cases); *but see S.Q.D.C. v. Bondi*, No. 25-CV-3348 (PAM/DLM), 2025 WL 2617973 (D. Minn. Sept. 9, 2025) (concluding that the government's "decision to detain" the petitioner in a similar habeas case fell within § 1252(g)).

### C. Mandatory or Discretionary Detention

In July 2025, Immigration and Customs Enforcement ("ICE") declared for the first time that mandatory detention under § 1225(b)(2) applies to "ALL applicants for admission," not just "arriving aliens." *See* ECF No. 1 ¶¶ 36–37.[2] The BIA has since applied ICE's interpretation in its decisions. *See, e.g., Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 228–29 (BIA 2025) (holding that an IJ lacks jurisdiction to release on bond anyone "present in the United States who has not been admitted after inspection").

---

[2]See *Jose J.O.E.*, 2025 WL 2466670, at *3–4, for a longer excerpt and discussion of the interim guidance.

Like the vast majority of courts that have addressed the issue,[3] this Court finds that ICE's interpretation is incorrect.[4]

As an initial matter, the Court notes again that, until October 2025, the government consistently took the position that Santos was *not* subject to mandatory detention under § 1225(b)(2).  The 2024 proceedings, the August 2025 BIA order, and the September 2025 warrant all explicitly relied on § 1226(a).  *See* ECF Nos. 1-3, 9-3, 9-5, 9-7.  The government has not explained—at least persuasively—its volte-face.

Putting that aside, the government's former interpretation of the statute was better than its current interpretation.  Section 1225(b)(2) applies to "applicants for admission"—also referred to as aliens "seeking admission"—including any "alien present in the United States who has not been admitted."  8 U.S.C. §§ 1225(a)(1), (b)(2)(A).  But Santos is not *seeking* admission to the United States.  He has lived here

---

[3]*See Belsai D.S.*, 2025 WL 2802947, at *5 (collecting cases); *Francisco T. v. Bondi*, No. 25-CV-3219 (JMB/DTS), 2025 WL 2629839, at *4 (D. Minn. Aug. 29, 2025) (same).  For recent examples, see *Sevilla v. Noem*, No. 25-CV-1325, 2025 WL 3200698, at *9, n.2 (W.D. Mich. Nov. 17, 2025); *Gutierrez v. Thompson*, No. 25-4695, 2025 WL 3187521, at *6, n.7 (S.D. Tex. Nov. 14, 2025)*; Marin v. Andrews*, No. 25-CV-01422, 2025 WL 3171484, at *6 (E.D. Cal. Nov. 13, 2025); *Cabanas v. Bondi*, No. 25-CV-04830, 2025 WL 3171331, at *5 (S.D. Tex. Nov. 13, 2025); *Ramos v. Rokosky*, No. 25-CV-15892, 2025 WL 3063588, at *8 (Nov. 3, 2025) (D.N.J. Nov. 3, 2025).

[4]The few cases to the contrary are distinguishable or otherwise not persuasive. *E.g.*, *Mejia Olalde v. Noem*, No. 25-CV-00168, 2025 WL 3131942, at *2–5 (E.D. Mo. Nov. 10, 2025); *Vargaz Lopez v. Trump*, No. 25CV526, 2025 WL 2780351, at *9–10 (D. Neb. Sept. 30, 2025); *Pena v. Hyde*, No. 25-11983, 2025 WL 2108913, at *1–2 (D. Mass. July 28, 2025).

since 2009.  As one judge recently remarked, "someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as 'seeking admission' to the theater. Rather, that person would be described as already present there."  *Lopez Benitez v. Francis*, No. 25 Civ. 5937, 2025 WL 2371588, at *7 (S.D.N.Y. Aug. 13, 2025).

Moreover, in 2025, Congress amended § 1226 to require detention of aliens who, while living in the United States, have been arrested for, charged with, or convicted of certain crimes.  *See* 8 U.S.C. § 1226(c)(1)(E).  According to the government, though, *every* alien present in the United States was already subject to mandatory detention under § 1225(a)(1).  If the government is correct, there was no reason for Congress to amend § 1226 in 2025.  *See Maldonado*, 2025 WL 2374411, at *12 (holding that the government's reading of § 1225 would render § 1226(c)(1)(e) superfluous); *Sevilla*, 2025 WL 3200698, at *9 (same); *see also United States v. Taylor*, 596 U.S. 845, 857 (2022) (noting that courts should not lightly find that separate provisions in the same law "perform the same work").

In short, § 1226(a) applies to aliens who are already present in the United States—and, under most circumstances, gives the government discretion to detain them.  By contrast, § 1225(b)(2)(A) applies to "an alien seeking admission" who is not

"clearly and beyond a doubt entitled to be admitted" into the United States—and

requires the government to detain such an alien.  As the Supreme Court has said:

> U.S. immigration law authorizes the Government to detain
> certain aliens seeking admission into the country under
> §§ 1225(b)(1) and (b)(2).  It also authorizes the Government
> to detain certain aliens already in the country pending the
> outcome of removal proceedings under §§ 1226(a) and (c).

*Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).

Santos is not an "alien[] seeking admission into the country."  *Id.*  Rather, he is an

"alien[] already in the country."  *Id.*  The government has discretion to detain him under

§ 1226(a), but it is not required to detain him under § 1225(b)(2)(A).

### D.  Dataphase *Factors*

Lastly, the government argues that, even if Santos is subject to § 1226(a), he is not

entitled to a preliminary injunction.  ECF No. 8 at 24–26.  The Court disagrees.

### 1.  Likelihood of Success on the Merits

Santos has already prevailed on his argument that the IJ erred in finding that

Santos was subject to mandatory detention under § 1225(b)(2)(A) and therefore that she

"lack[ed] authority to consider Respondent for release on bond."  ECF No. 1-6.  To be

clear:  This Court holds only that the IJ *does* have "authority to consider [Santos] for

release on bond."  *Id.*  Specifically, the Court holds that the IJ has authority to determine

whether Santos has made "a showing that [his] circumstances have changed materially

since [his] prior bond redetermination," entitling him to a "subsequent bond redetermination."  8 C.F.R. § 1003.19(e).  How the IJ chooses to *exercise* that authority is up to her, and any appeal from the IJ's decision would have to be taken to the BIA.

### 2.  Threat of Irreparable Harm

Santos will suffer irreparable harm absent relief because he is entitled to a decision on his request for a bond redetermination.  Depriving Santos of such a decision may result in his being unlawfully detained, and loss of liberty is an obvious example of irreparable harm.  *See Matacua*, 308 F. Supp. 3d at 1025.

### 3.  Balance of Harms and Public Interest

The burden of making a decision on Santos's bond-redetermination request is small, the consequences of Santos being denied that decision are potentially large, and both the government and the public have an interest in the fair and consistent enforcement of immigration laws.[5]

---

[5]The government argues that Santos should not have asserted certain claims against certain defendants.  ECF No. 8 at 16–18.  The Court declines to address this argument at this time.  The Court will not now dismiss any respondent, so that the Court can be certain that its order applies to whichever defendant is responsible for making a decision on Santos's bond-redetermination request.  *See Belsai D.S.*, 2025 WL 2802947, at *3, n.2 (deciding the same).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.     Petitioner's motion for a temporary restraining order [ECF No. 2] is

construed as motion for a preliminary injunction and is GRANTED IN

PART.  Specifically, the Court:

   a.     DECLARES that petitioner is not subject to mandatory detention

   under 8 U.S.C. § 1225(b)(2).

   b.     ENJOINS respondents from denying petitioner a decision on his

   bond-redetermination request on the basis that he is subject to

   mandatory detention under 8 U.S.C. § 1225(b)(2); and

   c.     ORDERS respondents to accept jurisdiction and make a decision on

   petitioner's bond-redetermination request within 14 days.

2.     The motion is DENIED WITH PREJUDICE insofar as petitioner

asks this Court to order his release.

Dated: November 25, 2025                    /s/ Patrick J. Schiltz
                                            Patrick J. Schiltz, Chief Judge
                                            United States District Court